NOT FOR PUBLICATION OR CITATION

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
PIKEVILLE

Eastern District of Kentucky
FILED
MAY 2 4 2006
AT COVINGTON
LESLIE G WHITMER
CLERK U S DISTRICT COURT

CIVIL ACTION NO. 06-CV-74-DLB

IN RE: FRANK BAYLIFF

## MEMORANDUM OPINION AND ORDER

\*\*\* \*\*\* \*\*\* \*\*\*

This matter is before the Court for initial screening. 28 U.S.C. §1915; 28 U.S.C. §1915A; *McGore v. Wrigglesworth*, 114 F.3d 601, 607-8 (6th Cir. 1997).

Frank Bayliff, an individual currently incarcerated in the United States Penitentiary-Big Sandy in Inez, Kentucky, originally sent a letter to the Clerk of this Court, who filed it as a *pro se* complaint. The Court issued an order on April 6, 2006, characterizing the construed complaint as being brought under its federal question jurisdiction, 28 U.S.C. §1331, and *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971); and informing the plaintiff of the district court filing fee and other deficiencies which must be cured if he wanted to proceed with a civil lawsuit. The plaintiff, along with another prisoner, has now signed and filed a formal verified complaint, which the Court considers to be an amendment of right, and he has paid the district court filing fee for a civil action.

### PARTIES

There are two prisoner-plaintiffs, Frank Bayliff and William T. Louis; the sole named defendant is Warden Suzanne Hastings.

## CLAIMS

Plaintiffs claim that Warden Hastings has violated their due process rights and other federal rights under the First and Eighth Amendments.

## RELIEF REQUESTED

The plaintiffs seek injunctive relief and damages.

## FACTUAL ALLEGATIONS

The Court summarizes and/or construes the factual allegations in the original letter [Record No. 1] and later amendment, a completed common complaint form [Record No. 7], as follows.

The plaintiffs are prisoners in the custody of the Federal Bureau of Prisons ("BOP"). They allege that on March 10, 2006, Defendant Hastings appeared in their cell and hand-cuffed and searched them. She then held them several hours before taking them to a cell in the segregated section of the prison. All of the plaintiffs' property was taken, including religious materials and legal materials on which they were working.

The plaintiffs were purportedly held in segregation for 5 days, with only one dirty mattress, one cover, no soap or towels, no change of clothes, no medications or other "daily necessities of life." Several guards purportedly told them that the warden's actions were wrong, but they could not give their property back or otherwise act against the warden. On the third day of their detention, a Lt. Hicks put out a memo informing prisoners that the warden cannot make BOP policy.

Plaintiffs Bayliff and Louis contend that they did nothing wrong, no charges were brought against them, and they still do not know why they were punished by the warden. The plaintiffs maintain the warden's actions were contrary to BOP policy, under which only a DHO[1] can impose

---

[1] Disciplinary Hearing Officer, the decision maker in BOP disciplinary proceedings in BOP facilities.

punishment. In his original letter, Bayliff stated that he had tried BOP "grievance procedures" twice, but no one would respond. In the later complaint, he and his co-plaintiff specify that they filed a BP-8 to an unidentified counselor, and they have written further, as follows:

> We filed complaint. Counselors kept saying they never received them. Even though we handed it to them in person. They don't want to go against Warden Hastings. . . . Counselor Dillion filed a sensitive BP 10 to Region, no response.

Record No. 7 at 2.

The plaintiffs seek $50,000.00 for each of them, and for the Court "to stop warden from retailiating [sic] and taking halfway house."

## DISCUSSION

The Court must begin any examination of a prisoner-plaintiff's allegations about the conditions of his confinement with an inquiry into his use of the administrative remedies available to him. Effective April 24, 1996, the United States Congress mandated the following:

> No action shall be brought with respect to prison conditions under §1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. §1997e(a). The Supreme Court of the United States has twice examined the statute and held that it means precisely what it says. *See Booth v. Churner*, 532 U.S. 731, 741 (2001); *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

The Sixth Circuit has consistently insisted on compliance with the statute--and a clear demonstration of said compliance--at the time of filing. *See Wright v. Morris*, 111 F.3d 414 (6th Cir. 1997), *cert. denied*, 522 U.S. 906 (1997). A plaintiff must either attach copies of the documents from the administrative process or describe the administrative steps he took and responses he received in the process, with particularity. *Brown v. Toombs*, 215 F.3d 640, 642 (6th Cir.), *cert.*

3

*denied*, 117 S. Ct. 88 (1998); *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000). Unless the record demonstrates that the requirements of §1997e(a) have been met, a district court must dismiss the lawsuit without prejudice. *Id.*

Further, the Sixth Circuit has interpreted §1997e as requiring that a prisoner file a grievance against the person he ultimately seeks to sue. *Curry v. Scott*, 249 F.3d 493, 505 (6th Cir. 2001); *Hartsfield v. Vidor*, 199 F.3d 305, 309 (6th Cir. 1999). Similarly, each claim which a prisoner wishes to bring must have been exhausted administratively. *Burton v. Jones*, 321 F.3d 569, 574-75 (6th Cir. 2003)); *Freeman v. Francis*, 196 F.3d 641, 644 (6th Cir. 1999).

Additionally, federal courts within this circuit must follow the "total exhaustion" rule, meaning that all of the claims must be exhausted for the district court to go forward; whenever there is a single unexhausted claim, despite the presence of other exhausted claims, the court must dismiss the entire complaint for failure to exhaust. *Jones Bey v. Johnson*, 407 F.3d 801, 806 (6th Cir. 2005). *See also Walton v. Bouchard*, 136 Fed.Appx. 846, 848 (6th Cir. 2005) (unpublished) (affirming dismissal of complaint because discrimination claim was unexhausted as to every defendant). In *Sanchez-Ramos v. Sniezek*, 370 F.Supp.2d 652, 656-57 (N.D. Ohio 2005), a sister district court in this circuit dismissed the prisoner's entire action, when an assault claim had been exhausted but his retaliation and medical care claims had not.

The administrative remedies available to inmates confined in Bureau of Prisons institutions are set out at 28 C.F.R. §§542.10-.19 (1998). Section 542.13(a) demands that an inmate "shall" first informally present his complaint to the staff (there is a form, a BP-8), thereby providing them with an opportunity to correct the problem, before filing a request for an administrative remedy. If the inmate cannot informally resolve his complaint, then he may file a formal written request (on a BP-9

4

form) to the Warden. If the inmate is not satisfied with the Warden's response, he may appeal to the Regional Director (a BP-10), and, if not satisfied with the Regional Director's response, the inmate may appeal that decision to the Office of General Counsel (a BP-11). *See* §542.15.

In the case *sub judice*, the plaintiffs provide no copies of their purported administrative attempts, nor do they describe them in detail. This is not only contrary to the statute requiring exhaustion, it is also contrary to the Court's order of April 6, 2006. In that deficiency order, the Court pointed out not only that the plaintiff had failed to pay the filing fee but also that his file lacked the following:

> Copies *or* detailed descriptions of the administrative remedies he has exhausted with regard to any claim, that is, his BP-10 and BP-11; and the BOP responses thereto; *or* detailed descriptions of what efforts he has made, to whom he directed those efforts, what topics were raised, and what responses he received.

Record No. 2 at 1. The Court granted him 30 days in which to provide the information and further advised him as follows:

> (4) Plaintiff is also on notice that his failure to adequately demonstrate exhaustion of his administrative remedies or an excuse for non-compliance with the exhaustion statute will result in dismissal of this case.

*Id.* at 2.

Nonetheless, Bayliff and his co-plaintiff have utterly failed to demonstrate exhaustion or a credible excuse for not complying. Their later-filed complaint still talks in generalities. Further, an allegation of exhaustion, even if made, would be suspect. This is so because the BOP's administrative process includes established response times, inconsistent with the timetable presented by the plaintiffs. "The deadline for completion of informal resolution and submission of a formal written Administrative Remedy Request, on the appropriate form (BP-9), is 20 calendar days

5

following the date on which the basis for the Request occurred." §542.14. Once the BP-9 containing a request is filed, the Warden has 20 days to respond; the Regional Director, 30 days; and General Counsel, 40 days. §542.18.

Moreover, the BOP is permitted an extension of time of up to 20 or 30 days at each level to respond to any request. *Id.* Crucial herein is the following provision of the administrative remedy scheme: "If the inmate does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level." *Id.*

Bayliff's first filing, the letter wherein he complains that he tried the remedy system twice and counselors would not respond to his grievance, is dated March 28, 2006. This is just eighteen (18) days after the March 10th incident, before the deadline for his filing an informal request at the first level, to a counselor or any other staff member. Later, the plaintiffs signed their joint complaint on April 8, 2006, just eleven (11) days after the initial filing. Again, the short time period works against them. Even if they assumed the lack of response from the counselor(s) to be a denial of relief and they went one step further, to the BP-9, the deadline had not yet passed for a response.

There is no suggestion anywhere in this record that the plaintiffs further pursued the administrative remedies available to them. The plaintiffs have failed to demonstrate exhaustion, as they are required to do initially under *Knuckes-El* and as they were instructed by the Court in its deficiency order, and the time has passed for them to do so. Therefore, the plaintiffs' complaint will be dismissed, the dismissal to be without prejudice to their later filing of any civil action in the future, after exhaustion.

The Court advises the plaintiffs that exhaustion is not merely a formality. The Sixth Circuit has repeatedly stressed the underlying reasons for exhaustion, explaining that it is a statutory

6

requirement and that "the importance of using the prison grievance process [is] to alert prison officials to problems." *Freeman v. Francis*, 196 F.3d at 644. *See also Curry v. Scott*, 249 F.3d at 505; *Hartsfield v. Vidor*, 199 F.3d at 308-09. Under the plaintiffs' own allegations, they have not alerted the warden or higher-up BOP officials about the complained-of conditions of confinement. Therefore, under federal law, the plaintiffs may not surprise them now with a lawsuit.

In the case *sub judice*, therefore, it is the duty of this Court to enforce the statutory requirement. *Knuckles-El*, 215 F.3d at 642. Another of the reasons for the requirement that administrative remedies be exhausted is to prepare a record for the Court. *See Brice v. Day*, 604 F.2d 664 (10th Cir.), *cert. denied*, 444 U.S. 1086 (1980). The plaintiffs' failure to demonstrate exhaustion of an existing administrative process violates the letter and purpose of the law of exhaustion. *See Mentecki v. Corrections Corp. of America*, 234 F.3d 1269, 2000 WL 1648127 (6th Cir. 2000) (unpublished); *McRae v. Corrections Corp. of America*, 208 F.3d 214, 2000 WL 302772 (6th Cir. 2000) (unpublished) (both related to impermissibility of prisoners beginning the process, then short-circuiting the system, and later alleging the futility of going further).

By providing no record, the instant plaintiffs have not assisted the Court--or themselves. If they had exhausted, the record may now have been sufficient to show that they suffered an injury. *See* 42 U.S.C. §1997e(e). And they may have provided sufficient details so as to state the elements of cognizable constitutional claims. *See e.g., Sandin v. Conner*, 515 U.S. 472, 484 (1995); *Thaddeus-X v. Blatter*, 175 F.3d 378 (6th Cir. 1999).

## CONCLUSION

Accordingly, the Court being advised, pursuant to 28 U.S.C. §1915(e)(2)(B), **IT IS ORDERED** as follows:

7

(1)     this action is **DISMISSED**, *sua sponte*, without prejudice, and Judgment for the defendants shall be entered contemporaneously with this Memorandum Opinion and Order;

(2)     and Plaintiff Bayliff's earlier motion to secure data [Record No. 3] is **DENIED** as moot.

This 24th day of May, 2006.

Signed By:
*David L. Bunning*
United States District Judge